## TYLER et al. v. HAMILTON et al.

### (Circuit Court, D. Oregon. June 12, 1894.)

### No. 1,946.

1. CORPORATIONS—RECEIVERS—SETTING ASIDE CONTRACTS WITH DIRECTOR.
   Leases of property of a corporation to a director, who held nearly all its stock, were assented to or ratified by the other directors, who held all the remaining stock. *Held,* that a receiver of the corporation, appointed in a suit to foreclose a mortgage of its property, could not contest the validity of the leases, he not representing creditors, and no circumstances being alleged vesting in him equities to maintain such a suit or to question the lessee's rights.

2. RAILROAD COMPANIES—FORECLOSURE OF MORTGAGES—RIGHTS OF PURCHASERS.
   Leases by a railway company of lands on which the lessee erected warehouses and platforms, containing provisions for the purchase of such improvements by the lessor or their removal by the lessee at the end of the term, were made subsequent and subject to mortgages of the land. *Held,* that assignees of the leases were not necessary parties to a suit to foreclose the mortgages, and a failure to make them parties thereto did not operate as a recognition of their status as tenants and a ratification of their leases; and, so far as the mortgagee was concerned, their rights were extinguished by the foreclosure sale.

This was a suit by W. D. Tyler, receiver of the Oregon & Washington Territory Railroad Company, against Hamilton and another, to have certain leases of property of the railroad company which had been assigned to defendants declared void. By a supplemental bill, the Washington & Columbia River Railroad Company was joined with the receiver as a complainant.

J. L. Sharpstein, Joseph Simon, and L. L. McArthur, for complainants.

J. J. Balleray and R. S. Strahan, for defendants.

GILBERT, Circuit Judge. A bill in equity was filed by W. D. Tyler, the receiver of the Oregon & Washington Territory Railroad Company, against Hamilton and Rourke as defendants, and thereafter a supplemental bill was filed, in which the Washington & Columbia River Railway Company was joined with the receiver as complainant. In these two bills it is alleged that in a former suit, brought in this court by the Farmers' Loan & Trust Company against the Oregon & Washington Territory Railroad Company to foreclose its mortgage bonds (58 Fed. 639), W. D. Tyler was appointed receiver of the mortgaged property, which consisted of a railroad, right of way, rolling stock, and other property and assets. That after the issuance and sale of said mortgage bonds, and on or about November 11, 1890, the board of directors of said Oregon & Washington Territory Railroad Company, consisting of five members, held a pretended special meeting, at which but three of the directors were present or notified, and that at such meeting

G. W. Hunt, one of the directors, and at the same time the president and manager of the company, fraudulently, and for his own gain, procured to be passed by himself and the other two directors present a resolution authorizing the corporation to lease to him for 20 years certain warehouse and platform property on the line of the right of way of said road, and belonging to the said company, describing the same; and that, on November 12, 1890, leases were executed and delivered to said Hunt, pursuant to said resolution. That the rental of said property, as expressed in the leases, was $1 per year, whereas the real value thereof was at least $7,300 per annum. That, prior to said leasing, warehouses and platforms had been constructed at some of the stations along said road, but none have been constructed since. That on May 2, 1891, Hunt transferred all his rights under said leases to the defendants, but the defendants took the same with notice of all the foregoing facts, and of the equities between the lessor and the lessee. That in said foreclosure suit of the Farmers' Loan & Trust Company, the railroad, right of way, rolling stock, and the appurtenances of said railroad company, together with said warehouse and platform property, were, upon the 20th day of April, 1892, sold at foreclosure sale to C. B. Wright, and said sale was thereafter confirmed by the court, and a deed of said property was thereafter made to said Wright; and that said Wright thereafter sold and conveyed the same to the complainant the Washington & Columbia River Railway Company, which company is now operating the road. That the defendants are in possession of said leased property, but that it is essential to the operation of said road by the owner thereof that it should have control of said leased grounds and of said warehouse and platform property, all of which, at the time of making said lease, was owned, legally or equitably, by the said Oregon & Washington Territory Railroad Company. The prayer of the bill is that the leases be declared void, and that the defendants account for the profits derived by them thereunder. The answer denies that the warehouse or platform property was included in the sale to Wright, or in the conveyance from him to the Washington & Columbia River Railway Company. Admits that the resolution to lease was adopted at a meeting of three directors; but alleges that the others had notice of the meeting, and that they assented to the same, and that the lease was for the benefit of the lessor; that the lessor had no money to erect warehouses or platforms to accommodate the trade of the road; that said G. W. Hunt was the owner of 98,985 shares of the stock of said company, and the other directors owned the remaining 1,015 shares thereof; and that to secure traffic for said road, said Hunt was solicited and requested by the other directors to construct warehouses at his own expense, and to take leases of parcels of land along the right of way for that purpose, and that, in consequence thereof, he did, at his own individual expense, and at a cost of $48,000, construct the warehouses mentioned in the bill.

The evidence taken upon these issues shows that at the time the mortgage bonds were issued and sold there were no warehouses

on the line of the road, but that shortly thereafter G. W. Hunt, who was practically the owner of the road, he holding in his own name all of the stock excepting about 1 per centum thereof, which had been placed in the names of the other directors, apparently to qualify them to act in that capacity, constructed the warehouses and platforms in question at his own expense, and at a cost of about $48,000, with the understanding that he was to have the leases, which were subsequently made on the 12th of November, 1890. Although there were but three directors present at the meeting which adopted the resolution to lease, the other directors were fully aware of the meeting, and of the intention to grant the leases, and the evidence shows beyond question that they subsequently accepted and ratified the action then had. The receiver is in no attitude to contest the validity of those leases. He was a receiver appointed in the foreclosure suit to take charge of the mortgaged property pending the foreclosure. He is not shown to represent creditors, and no circumstances are alleged to exist which would vest in him equities to maintain this suit, or to question the rights of the defendants under the leases. A court of equity will, under certain circumstances, set aside a contract between a corporation and its directors, at the option of its stockholders, or at the suit of creditors. It may be said that, in general, the dealings of the directors with the corporation are viewed with suspicion. The director occupies a fiduciary relation to the stockholders whom he represents, and his contracts concerning the property which is the subject of the trust are generally voidable at the instance of the party whose interest he represents. But such dealings are not absolutely prohibited, and they will be sustained if they are fair, and have been entered into in good faith, and no advantage has been taken of the fiduciary relation. Oil Co. v. Marbury, 91 U. S. 587–589; Hotel Co. v. Wade, 97 U. S. 13; Stark v. Coffin, 105 Mass. 328; Buell v. Buckingham, 16 Iowa, 284. In the case before the court the stockholders were all directors of the company, and they all assented to and ratified the leases. Hunt's relation to the other directors was not that of a trustee to cestuis que trustent. He sustained no fiduciary relation to them that they did not likewise sustain to him. In making the leases, he represented not the other stockholders, but himself; and they represented themselves, and not Hunt. They were not in the attitude of stockholders who had confided their interests to a board of directors, but they were themselves clothed with the power of directors, and were in a position each to protect his own interest. None of these stockholders is now here attacking the leases; neither does the corporation offer to rescind the same. No creditor of the corporation is here asserting his rights, and, if there were, no facts are shown upon which equitable relief to creditors might be predicated.

It remains to be considered what are the rights of the Washington & Columbia River Railway Company. That company is the successor in interest to the property purchased upon the foreclosure sale, and it has acquired all the rights that were vested

in the purchaser at that sale. The Farmers' Loan & Trust Company brought its suit to foreclose three several mortgages, made to secure the mortgage bonds. In these mortgages, following the specific description of the property, is a general description, which includes:

"All the lands, tenements, and hereditaments acquired or appropriated, and which may be hereafter acquired or appropriated, for the purpose of a right of way for said railroad and branch, or either thereof, and all the easements, appendages, and appurtenances thereunto belonging or in any wise appertaining, and all the railways, ways and rights of way, depot grounds, and other grounds, tracks, side tracks, spur tracks, bridges, viaducts, culverts, fences, and other structures, depots, station houses, engine houses, car houses, freight houses, warehouses, fuel houses, machine shops, repair shops, water tanks, turn tables, superstructures, erections, and fixtures, whether now held and owned, or hereafter to be acquired and owned, for the company, for the use of said railroad and branch, or for either of them."

The lien of these mortgages extended to and covered all the real estate upon which the warehouse and platform improvements were subsequently erected by Hunt. By the foreclosure of the mortgages, and the sale thereunder, the title to the property passed to the purchaser. The leases had been executed and placed of record before the foreclosure suit, and it is not contended that either the complainant in the foreclosure suit or the purchaser at the foreclosure sale was ignorant of their existence. The leases contain the provision that at the end of the term thereof the lessor may purchase the improvements placed upon the leased property by the lessee, or, in case of failure so to do, that the lessee may remove the improvements. That right was not destroyed by the foreclosure suit, and undoubtedly it still subsists in the defendants. They may sell their warehouses and platforms, or remove the same from the leased premises. I am unable to perceive that they have other rights. The leases were made subsequent and subject to the mortgages. The contract of leasing was wholly between the mortgagor and the lessee. The mortgagee had no privity with the lessee. It did not assent to the leases, and its rights were not affected thereby. The lessee, while in possession as tenant of the mortgaged premises, had no seisin thereof. His possession was the seisin of the lessor, who held the legal title. The tenants in possession were not necessary parties to the foreclosure suit. They had no lien upon the land, and no equity of redemption therein. The foreclosure sale operated to evict them by title paramount. From and after the sale they were trespassers, unless they attorned to the purchaser, or the purchaser recognized their rights as tenants. Rogers v. Humphreys, 4 Adol. & E. 299; McDurmot v. Burke, 16 Cal. 580; Teal v. Walker, 111 U. S. 248, 4 Sup. Ct. 420; Haven v. Adams, 4 Allen, 80. There is nothing in this case to show attornment upon the part of the tenants, or a recognition of their tenancy by the purchaser at foreclosure, or by his successor in interest. The defendants are before the court, not seeking the intervention of equity for the protection of their rights by redemption from the mortgage sale, but contending that the failure of the mortgagee to bring them in as parties defend-

ant to the foreclosure suit operated as a recognition of their status as tenants, and a ratification of their leases. This contention cannot avail them, for, as we have seen, they were not necessary parties to that suit, and, so far as the mortgagee was concerned, their rights were extinguished by the foreclosure sale. In this view of the case there is no ground for the equitable intervention of this court on behalf of either of the parties complainant, since the receiver has no standing for relief in equity, and the Washington & Columbia River Railway Company had its plain and adequate remedy at law. The bill must be dismissed.