HOOK v. AYERS et al.[1]

(Circuit Court of Appeals, Seventh Circuit. October 1, 1894.)

No. 155.

CORPORATIONS—OFFICERS—RAILROAD BONDS—PLEDGE.

A railroad company, being the owner of 247 bonds of another company, pledged 125 of them to cross complainants, M. P. Ayers & Co. At or before that time the president of the company pledged the remaining 122 bonds to a syndicate, composed of himself, two of the cross complainants, and others, for a debt due by the company; and this with the knowledge of the cross complainants. Having subsequently acquired the interests of his associates in the syndicate, the president undertook to take title absolute to the bonds by crediting a certain amount upon the debt of the railroad company. *Held*, that the transaction was at most voidable at the suit of the railroad company, its shareholders or creditors, and could not be attacked by the pledgee of the other bonds.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Suit by Charles H. Brownell, trustee, against the Louisville & St. Louis Railway Company, Jacksonville & Southeastern Railway Company, doing business as the Jacksonville Southeastern Line, Jacksonville, Louisville & St. Louis Railway Company, Louisville, Evansville & St. Louis Consolidated Railway Company, Marshall P. Ayers, Augustus E. Ayers, and John A. Ayers, partners as M. P. Ayers & Co., to foreclose a trust deed, and cross bill by Marshall P. Ayers, Augustus E. Ayers, and John A. Ayers, firm of M. P. Ayers & Co., against Charles H. Brownell, trustee, Louisville & St. Louis Railway Company, Jacksonville Southeastern Railway Company, doing business as the Jacksonville Southeastern Line, Jacksonville, Louisville & St. Louis Railway Company, Louisville, Evansville & St. Louis Consolidated Railway Company, William S. Hook, and Mary B. Hook, to determine the relative rights of the bondholders. There was a decree of foreclosure and distribution, from which Mary B. Hook appeals.

Isaac L. Morrison and Thos. Worthington, for appellant.

William Brown, for appellees.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge. The contention here involves the relative rights of the holders of the mortgage bonds issued by the Louisville & St. Louis Railway Company. In a suit brought by the trustee to foreclose the trust deed securing such bonds, the appellees filed their cross bill against William S. Hook, subsequently amended by bringing in the appellant, to obtain adjudication of such relative rights. The cross bill asserts that the Jacksonville Southeastern Railway Company contracted with the Louisville & St. Louis Railway Company to build the railroad of the latter company from Centralia to Drivers, in consideration whereof the latter

[1] Petition for rehearing overruled. For opinion on rehearing, see 64 Fed. —.

company was to issue and deliver to the former company its bonds, 247 in number, and in the aggregate amounting at par value to $247,000; that the Jacksonville Company was without funds to construct the road, and that at its request the appellees furnished the necessary money for that purpose from time to time as the work progressed; that the Jacksonville Company gave its promissory notes to the appellees for such advances, and delivered to them 125 of the bonds, of $1,000 each, as collateral security therefor,— and claims that the several advances, with interest, amounted at the filing of the cross bill to about the sum of $120,000. It further alleges that, at the time of the execution of the bonds, William S. Hook was president of the Jacksonville Southeastern Railway Company; that he became the custodian of the remaining 122 of the issue of bonds; "that he is not entitled to the same in his personal right, and that, whatever of right he may have, it is subordinate and inferior in equity to the right of the complainants; and that he has no legal right to the bonds, other than as president of the Jacksonville Southeastern Railway Company." The cross bill prays that the debt of the appellees against the Louisville & St. Louis Railway Company may be held to be superior to the claims of all others, and that it be paid out of the proceeds of sale. Mr. Hook answers the cross bill, claiming that the remaining 122 bonds had been lawfully transferred to him for value, and the appellant answers that she acquired the same through the gift of them to her by her husband, and asserting title to the bonds at the time of the gift to have been perfect in her husband, William S. Hook, and praying that her title to the same may be protected by the decree of the court. Upon replication and issue thus joined, evidence was taken before a master, who reported the same to the court. Subsequently, on the 1st day of November, 1893, a final decree was passed in the court below upon the original and upon the cross bill, adjudging a sale of the road, and also adjudicating the distribution of the proceeds of sale between the appellant and appellee. With respect to the contention involved, the decree finds as follows:

(14) That in the year 1887 the Jacksonville Southeastern Railway Company entered into a contract with the defendant company, the Louisville & St. Louis Railway Company, to build and construct for said last-named company a railroad from the city of Centralia to the town of Drivers, a distance of about seventeen miles, and in consideration thereof the said Louisville & St. Louis Railway Company was to issue and deliver to the Jacksonville & Southeastern Company its bonds secured by deed of trust upon said railway so constructed, which said bonds and deed of trust or mortgage are specified in said original bill. (15) That said railway was constructed in accordance with the terms of said contract, and thereupon the Louisville & St. Louis Railway Company issued and delivered to the Jacksonville Southeastern Railway Company two hundred and forty-seven of its bonds, of the denomination of one thousand dollars each, bearing interest at the rate of five per cent. per annum, and the same bonds specified in the said original bill, and secured to be paid by the mortgage also specified in said original bill. (16) That at the making of said contract the said Jacksonville Southeastern Railway Company was without the means or ready money to construct said railway, and that M. P. Ayers & Co., the complainants in said cross bill, at the request of the said Jacksonville Southeastern Railway Company, furnished the neces-

sary money for that purpose, and the Jacksonville Southeastern Railway Company executed and delivered to the said M. P. Ayers & Co. its promissory notes therefor, and with said notes delivered to the said M. P. Ayers & Co. one hundred and twenty-five of the said bonds, numbered from 1 to 125 inclusive, as collateral security for said advances. (17) That, at the delivery of said bonds by the Jacksonville Southeastern Railway Company to the said M. P. Ayers & Co., it was agreed between them that the said bonds so delivered should be the first and best lien on said mortgage estate, and superior to that of any other bonds of the same class. (18) That the defendant William S. Hook, at the delivery of said bonds and at the making of said agreement, was the president of the said Jacksonville Southeastern Railway Company, and that afterwards he, the said William S. Hook, while president as aforesaid, took the remaining one hundred and twenty-two of said bonds, numbered from 126 to 247, both inclusive, without the authority of said Jacksonville & Southeastern Railway Company, and with full knowledge and notice of the said agreement with M. P. Ayers & Co., and delivered the same to Mary B. Hook, his wife, as a gift, and that the said Mary B. Hook now holds the same, and has filed them in this case. (19) That the allegations of the said cross bill and amendment thereto are true, and that the equities are with the complainants, M. P. Ayers & Co.

The decree thereupon adjudged that out of the net proceeds of sale the master should first pay to the appellees the sum due on the 125 bonds held by them, and in case of any overplus he should pay the same to Mary B. Hook, until her full amount was paid. The appellant brings here for review the decree of the court below, so far as it adjudges the relative rights of the contesting parties with respect to priority in payment of the bonds. The facts, as disclosed by the record, are mainly undisputed. Upon one material point only can there be said to be controversy. The undisputed facts may be thus summarized:

Prior to any transfer of the bonds in question the Jacksonville Southeastern Railway Company owned and operated a line of railway from Jacksonville to Litchfield. The road was bonded in the sum of $1,420,000, of which amount $194,000 remained in the treasury of the company. Mr. Hook was president, and the appellees Marshall P. and Augustus E. Ayers were two of the directors, and of the company; the former being also its secretary, and the latter being also its vice president. These three persons held equal amounts of the stock, their joint holdings aggregating over $600,000, and constituted the controlling interest. Mr. Hook, on the 1st day of February, 1887, and in behalf of a syndicate of six gentlemen, contracted with the receivers of the Wabash, St. Louis & Pacific Railway Company to operate certain lines from Pekin to Jacksonville, and from Havana to Springfield (now known as the Chicago, Peoria & St. Louis Railway); the syndicate to pay operating expenses and taxes, and to pay the receiver the one-half part of the net profits. In this syndicate, Mr. Hook held a one-half interest, and Marshall P. Ayers and John A. Ayers, two of the appellees, each held a one-tenth interest. The bank account with the appellees was kept in the name of the Jacksonville Southeastern Railway Company, but, to their knowledge, embraced the earnings of all the lines. The net earnings of the leased lines accruing to the syndicate on July 1, 1887, amounted to $38,006.57, and were deposited in the bank ac-

count of the appellees to the credit of the Jacksonville Southeastern Railway Company. On July 4, 1887, the bank account exhibited a credit of some $8,500, but the appellees held the notes of the company for $65,000, moneys advanced. In that month Mr. Hook sold the $194,000 of bonds remaining in the treasury of the Jacksonville Company, realizing therefrom $174,600 in cash, which on the 5th day of July was deposited in the bank of the appellees to the credit of the Jacksonville Company. On the 7th day of July the company took up its note held by the appellees. This transaction was had upon the understanding that the appellees should thereafter advance the necessary means to construct the Louisville & St. Louis Railway line from Centralia to Drivers, which the Jacksonville Company had contracted to build. In October, 1887, the moneys of the Jacksonville Southeastern Railway Company in the bank seem to have been exhausted, and advances were made by the appellees to that company, and were used in the construction of the Louisville & St. Louis Railway. On the 14th of November, 1888, the balance due for such advances amounted to $35,000, for which a note was given as hereafter stated. On October 1, 1887, the Louisville & St. Louis Railway Company executed and delivered its trust deed securing the issue of 247 bonds of $1,000 each. These bonds were early in the month of December, 1887, delivered to the Jacksonville Company for the construction of the road. The line was thrown open to the public and operated for traffic on and after the 4th day of December, 1887. On the 1st day of January, 1888, interest upon the bonds of the Jacksonville Company matured to the amount of $42,500, and the company was without means to meet the indebtedness. Mr. Hook applied to the appellees for a loan to the company to meet that payment, and they agreed to and did advance the necessary money upon collateral security, receiving the company's note, dated December 30, 1887, for $42,500 at 90 days, with 7 per cent. interest. The note recites that there was deposited with the appellees as collateral security "for payment of this or any other liability or liabilities of ours to said bank, due or to become due, or that may be hereafter contracted, the following property, viz. bonds of the Louisville and St. Louis Railway Company, amounting to the sum of $125,000, being numbered from 1 to 125 inclusive." The note was signed: "Jacksonville Southeastern Railway Company, by William S. Hook, president. Attested: M. B. Ayers, Secretary." On the 1st of July, 1888, another installment of interest on the Jacksonville Railway Company's bonds to the amount of $42,500 became due, and that company was without means to meet the payment. Mr. Hook proposed to the syndicate operating the leased lines, and also to the appellees, that, as both had made large advances to the Jacksonville Company, they should advance in equal amounts the money required to pay that interest. The plan was carried into effect, the members of the syndicate advancing one-half of the amount, and the appellees advancing the other half. The appellees, for their advance, took the note of the company, signed by Mr. Hook as president and attested by Mr. M. P. Ayers

as secretary, dated August 1, 1888, at 60 days, with 8 per cent. interest; and Mr. Hook on the same day executed a note for a like amount for the sum advanced by the syndicate, which was delivered to Mr. Marcus Hook to hold as trustee for the benefit of the syndicate. On the 31st of May, 1888, the net earnings of the leased lines operated by the syndicate, and which had been deposited in the bank account to the credit of the Jacksonville Company, amounted to $69,125.05, and had been consumed by the railway company in the construction of the Louisville & St. Louis Railway, and for its own purposes. At that time Mr. Hook, as president of the Jacksonville & Southeastern Railway Company, executed its note dated May 31st, one day after date, for $65,000, with 6 per cent. interest, on account of that indebtedness of the Jacksonville Company to the syndicate, and the note was delivered to Marcus Hook as trustee for the benefit of the syndicate. The remaining 125 bonds of the Louisville & St. Louis Railway Company were about January, 1888, deposited by Mr. Hook with the American Exchange Bank of New York, subject to the order of T. J. Hook & Co., a firm which was substantially William S. Hook, in trust for and subject to the order of the syndicate, and as security for such amount as might be due from the Jacksonville Company. Upon the execution of the $65,000 note to the syndicate a dividend was declared of that amount, and receipts were taken by Marcus Hook from each member of the syndicate (except Mr. John A. Ayers, who appears to have been ill at the time) for the proportion coming to each. These receipts were delivered to Marcus Hook, and represented the share of each in the $65,000 note, but no money was paid thereon at the time. In the month of June, 1889, William S. Hook, at the suggestion of Mr. John A. Ayers, agreed to purchase the interest of the other members of the syndicate. At this time one Southworth, a judgment creditor of the Jacksonville Company, was seeking to obtain the appointment of a receiver of the railway. To avert that result it became necessary to give a bond in the sum of $10,000, and to obtain a supersedeas upon appeal from the judgment which he had obtained. All the members of the syndicate, except Mr. Hook, were unwilling to assume any obligation in that respect. There were also unpaid taxes owing by the Jacksonville Company, and the sum of $42,500 of interest was maturing on the 1st day of July. The syndicate had also outstanding obligations with no means to pay the same, save such amount as could be realized on the 122 Louisville & St. Louis bonds held as collateral for advances to the Jacksonville Company. Mr. William S. Hook thereupon, at the suggestion of Mr. John A. Ayers, assumed the giving of the bond in the Southworth case, and all obligations of the syndicate, and purchased the interest of the other members of the syndicate on the basis of $30,000 for the entire interest of the syndicate in the property. Mr. Hook paid each member of the syndicate for his interest on that basis, each of the appellees John A. Ayers and Marshall P. Ayers receiving $3,000 from Mr. Hook for his interest. Mr. Hook also subsequently paid the Southworth judgment, amounting to some $7,000. On November 14,

1888, the Jacksonville Southeastern Railway Company, by William S. Hook, president, and M. P. Ayers, secretary, executed its promissory note for $35,000, which was delivered to the appellees. This note recites that the bonds of the Louisville & St. Louis Railway Company, numbered from 1 to 125 inclusive, are given as collateral. This note was given for the balance of account due by the Jacksonville Company, and represents moneys which were used in the construction of the Louisville & St. Louis Railroad. The debt due to the appellees is represented by the three notes of $42,500, $21,250, and $35,000 respectively, the first two being for moneys advanced to the Jacksonville Company to pay interest on its own bonds, and the latter for advances to that company to construct the Louisville & St. Louis Railway line.

The parties agree that at the time of the deposit of moneys by the Jacksonville Company, and the payment of its note to the appellees, in July, 1887, it was arranged that in consideration thereof the appellees should advance money to be used in the construction of the road from Centralia to Drivers. They disagree as to the condition upon which such advances should be made. One of the appellees asserts that Mr. Hook stated "he would secure us," but in what way is not disclosed; another, that Mr. Hook promised they "should be reimbursed by the sale of the Louisville & St. Louis bonds," then not in existence; the third does not seem to speak to the transaction in question. Mr. Hook insists that, in consideration of the payment of the Jacksonville Company note at that time, the appellees agreed thereafter to make the necessary advances to the amount of the note then paid. He controverts any agreement to pledge the bonds when they should be issued. Subsequently the appellees took specific bonds in pledge for their advances. If they did not know on the occasion of the first of these loans that the remaining 122 bonds were claimed to be held in trust for advances made by the syndicate, of which two of the appellees were members, to the Jacksonville Company, they certainly knew it beyond contention on the 31st day of May, 1888, when they were so informed by Mr. Marcus Hook. Thereafter they made advances, taking the notes of the Jacksonville Company secured by specific pledge of the 125 bonds held by them, and without any claim made upon the remaining 122 bonds. The two cross complainants, who were members of that syndicate, with that knowledge, sold to Mr. Hook their interest in the syndicate, receiving from him $6,000 therefor. No claim of an equitable pledge of the 122 remaining bonds would seem to have been made by the appellees before their examination in November, 1892. They assert no such claim in their cross bill filed in July, 1891. The decree finds no such agreement. If it be possible to establish an equitable pledge in the light of this evidence and of the subsequent acts of the cross complainants, it is sufficient to say that no such alleged pledge is charged in the bill, or made the foundation of the decree.

The decree finds that in December, 1887, upon the delivery of the 125 bonds to the appellees in pledge, it was agreed between them and the Jacksonville Company that the "bonds so delivered should

be the first and best lien on the said mortgaged estate, and superior to that of any other bonds of the same class."

The evidence upon which this finding is sought to be rested, is as follows:

Mr. John A. Ayers states as follows: "Statement was made that these bonds should be transferred to us from No. 1 to 125, Louisville & St. Louis, as security for advances made by M. P. Ayers & Co., of $42,500." This was undoubtedly correct, and is the transaction disclosed by the written contract. Upon being pressed whether anything further was said "about the bonds," he replied, "The statement was then made that the Louisville & St. Louis bonds were to be sold to reimburse us for the advances made to the Jacksonville Southeastern." The subject of the interview had relation to the loan of $42,500. The witness does not state that reference was made to any other bonds than those actually pledged. It probably was contemplated that those should be sold to meet the advance of $42,500. They amounted at par to more than thrice the amount of the loan, and their sale was authorized by the pledge. It seems improbable, if the appellees were at the time seeking further security for the then present advance, that they should not then have demanded and received it. The whole issue of bonds was then in existence, to their knowledge. They had been signed by Mr. Marshall P. Ayers, one of their number, as secretary; and all of the appellees were in a position to be fully informed of the transactions with respect of all the lines of railway, being largely interested in all, and officially connected with all. Mr. Marshall P. Ayers states the understanding to be that the notes—that is, the three notes now existing—were to be paid out of the sale of the Louisville & St. Louis bonds when they were sold. He speaks in a very general way. He does not particularize the specific bonds, or state that he refers to the whole issue. His testimony is quite consistent with the written pledge of the 125 bonds for the loan of $42,500, and for the notes thereafter executed. He is unwilling to say that the appellees were to be paid out of the remaining bonds to the exclusion of other creditors of the company. Mr. Augustus E. Ayers states that, at the time of the application for the loan of $42,000:

"I then said to him that I would like some bonds as security, for the reason that I did not know what the financial condition of the country would be, and that I wanted some bonds in New York to use as collateral. He said he would get me $125,000 in bonds; that that was all that would be issued until the completion of the track; and, more than that, he said that all the bonds should be held intact to pay any advances of M. P. Ayers & Co. to the railroad line."

But upon cross-examination he states as follows:

"We then took a note for $42,500, and to aid us in raising money, if it was essential, he gave me an order with it for $125,000 in bonds, and said that all the balance of the bonds belonged to the railroad treasury or syndicate."

This witness would seem to be mistaken in his assertion that Mr. Hook represented at the time of this conversation a stated number of bonds were all that could be issued until the comple-

tion of the track. He places the conversation in the last week of December, 1887, at the date of the note. It took place in the presence of Mr. John A. Ayers. The latter, in his testimony, makes no such statement. Mr. Hook denies any such statement. As a matter of fact the road was completed and in full operation on the 4th day of December previous. That was matter of public notoriety. The witness was one of the directors of the company, and could not have been ignorant of the completion of the road, and could not have been imposed upon by such a statement, if it was made. It may further be observed that his assertion that he was promised by Mr. Hook "that all the bonds should be held in trust to pay any advances of M. P. Ayers & Co. to the railroad line," if he would apply the remark to include the remaining 122 bonds, is irreconcilable with the statement that Mr. Hook informed him at the time that the balance of the bonds belonged to the syndicate. This theory of an equitable pledge to the appellees of the 122 bonds conflicts with the express declaration of the notes accepted by them, signed by one of the appellees as secretary of the Jacksonville Company, upon the occasion of subsequent advances, and stated to be secured by the pledge of the 125 bonds. It conflicts with the evidence of the cross complainants themselves, one asserting his information at the time that the bonds were held in trust for the syndicate. It is in conflict with the subsequent action of Marshall P. Ayers and John A. Ayers, who, as members of the syndicate, sold their interest therein to Mr. Hook with knowledge that he claimed that these 122 bonds were held in trust as collateral security for the claim purchased of them. The testimony of Mr. Hook with respect to this transaction appeals to us as entirely consistent with the contract executed, to accord with the subsequent acts of the appellees, and to be supported by the testimony of the appellees themselves. He states:

"I did refuse to give him more bonds than the 125 bonds to secure the $42,500 note, and assigned as a reason that I intended to hold these bonds, the 122,000, to secure the syndicate for advances made by the Chicago, Peoria & St. Louis Company to the Jacksonville Southeastern Railway Company. I did not at that time state to A. E. Ayers that the 122 bonds were to be held to secure any advances made by M. P. Ayers & Co. to the Jacksonville Southeastern Railway Company."

The evidence of Mr. Augustus E. Ayers is only to be reconciled with itself and with the subsequent conduct of the parties, and with the written agreements, upon the construction that the 125 bonds pledged as collateral to the note of $42,500 should serve as collateral for any future advances that the appellees might make; and that was undoubtedly the fact, as expressly stated in the written contract of pledge. And, finally, it is to be observed that there is no assertion of any such claim of equitable pledge in the cross bill, or of any claim in the cross bill or in the evidence that the 125 bonds pledged were to be a first lien upon the mortgaged estate in priority to the other bonds secured by this trust deed. It proceeds solely upon the theory that the 125 bonds, and those alone, were pledged; and it claims that the appellees are entitled

to priority of payment for those 125 bonds over the 122 remaining bonds, because, and only because, the latter are in fact the property of the Jacksonville Southeastern Railway Company, and are held by Mr. Hook merely as custodian of that company. The finding of the seventeenth paragraph of the decree that it was agreed that the 125 bonds should be the first and best lien upon the mortgaged estate, superior to that of any other bonds of the same class, has no support in the allegations of the cross bill, or in the evidence before the court.

We are next confronted with the claim presented by the cross bill, and upon which the appellees predicate their demand for priority in payment of their bonds, namely, that the 122 remaining bonds are in fact the property of the Jacksonville Southeastern Railway Company, and held by Mr. Hook as president of the company, and merely as its custodian, and that any right of his thereto is subordinate and inferior in equity to the rights of the appellees. The decree, by the eighteenth paragraph, finds that Mr. Hook took the bonds without the authority of the Jacksonville & Southeastern Railway Company, and with full knowledge and notice of the agreement alleged to have been made with M. P. Ayers & Co. that the 125 bonds delivered to them should be the first and best lien on the mortgaged estate, and superior to that of any other bonds of the same class. We have reached the conclusion that no such agreement was made, and the question of notice of it to Mr. Hook therefore passes out of the case. So that the question remains whether these 122 bonds are the property of the Jacksonville Company, and were taken by Mr. Hook without the authority of the company, or whether they became his property by the transactions detailed in the evidence. Mr. Hook claims that the 122 bonds were, about the 1st of January, 1888, deposited by him with the American Exchange National Bank of New York, subject to the order of T. J. Hook & Co., and held by T. J. Hook & Co. subject to the order of the Chicago, Peoria & St. Louis Syndicate as collateral security for such advances as had been or should be made by the syndicate to the Jacksonville Company. The note of the Jacksonville Company for $65,000, dated May 31, 1888, was delivered to Marcus Hook as trustee of the syndicate. On October 1, 1889, William S. Hook caused to be indorsed on that note a credit of $61,000 as the purchase price of the 122 bonds, which he then took to himself, and claimed to own absolutely. The principal stockholders of the Jacksonville Company were Marshall P. Ayers, Augustus E. Ayers, William S. Hook, and Elliott & Dunn, of Philadelphia, their holdings amounting to about $930,000 of the $1,000,000 of capital stock. The syndicate, or in other words, the Chicago, Peoria and St. Louis Railway Company, was composed of William S. Hook, M. P. Ayers, John A. Ayers, Edward L. McDonald, E. S. Greenleaf, and Charles S. Rannells. Prior to this indorsement of payment, Mr. Hook had purchased all the interest of his associates in the syndicate. It is contended with great earnestness that the transactions of Mr. Hook in transferring the

122 bonds, and in purchasing and taking them to himself, were void, and that the bonds still remain the property of the Jacksonville Southeastern Company.    This contention is sought to be supported upon the familiar principle that one occupying fiduciary relations cannot deal with the subject matter of his trust upon his own account and for his own advantage, to the injury of those whose interests he is bound to protect.    But it is a mistake to suppose that such transactions are absolutely void.    They are at most voidable at the instance of the cestui que trust.    Such dealings are upheld when they are fair and in good faith, and without impeachment of the fiduciary relation.    Oil Co. v. Marbury, 91 U. S. 587; Tyler v. Hamilton, 62 Fed. 187–189.    The transactions complained of here, if unfair and wrong, were injurious to the Jacksonville Company, and can only be impeached by that company, its creditors or shareholders.    Certainly they cannot be impugned by the appellees, who are in court simply as pledgees of the other bonds.    The cross bill makes no attack upon those transactions as in any way detrimental to the company, its creditors or shareholders.    It may be further remarked that the transfer of these bonds in trust for the syndicate was known to the appellees probably at the time of the making of the first note, certainly before the making of the last two.    Two of the appellees were members of the syndicate, and disposed of their interest therein, and in the 122 bonds so held as collateral for the advances to the syndicate, to Mr. Hook, and received from him the consideration therefor. They would seem to be estopped by their conduct from denying the right of Mr. Hook to hold the bonds as collateral for the debt due the syndicate.    Hotel Co. v. Wade, 97 U. S. 13.    If the transaction by which the bonds were taken by Mr. Hook absolutely upon crediting a certain amount upon the notes was unwarranted, it can only be gainsaid by the Jacksonville Company, its creditors and shareholders; and if it were void Mr. Hook could still hold them as collateral for the debt to the syndicate, if that pledge is sustained.    We are of opinion that the appellees are in no condition, suing neither as creditors nor shareholders, to contest the right of the appellant to the bonds.

The appellant insists that that portion of the decree is erroneous which directs the payment to the appellees of the full amount of the 125 bonds, with interest, since they hold them as collateral security for a smaller indebtedness.    We find in the record no assignment of error which presents that question to our consideration, and must therefore decline at this time to express any opinion upon it.    If error in that respect has intervened, it can be corrrected by the court below upon reconsideration.    The determination of that question, we suggest, may well be postponed until the distribution of the proceeds of sale.    They might prove sufficient to render the question of no practical moment.    The decree is reversed, and the case remanded for further proceedings in accordance with this opinion.