[Civil No. 1384.    Filed June 23, 1914.]

[141 Pac. 717.]

WALTER BENNETT, as Administrator of the Estate of L.
E. PAYSON, Deceased, Appellant, v. UNITED STATES
LAND, TITLE AND LEGACY COMPANY, a Corpora-
tion, S. HENRY, JESSIE F. TULL, M. TULL, Appel-
lees.

1. EJECTMENT—TITLE TO SUPPORT ACTION.—In ejectment, plaintiff must
recover upon the strength of his own title.

2. MORTGAGES—ACTION TO FORECLOSE—NECESSARY PARTIES.—A party
holding an executory contract to purchase mortgaged property, exe
cuted by the mortgagor subsequent to the giving and recording of the
mortgage and before a foreclosure is commenced, is not a necessary
party defendant to foreclosure proceedings.

3. VENDOR AND PURCHASER—RIGHTS OF PARTIES—POSSESSION BY VEN-
DEE.—The fair inference is that the entry and possession of a pur-
chaser under an executory contract to purchase land, the considera-
tion not being paid, is in subordination to the title of the seller
until the purchase price is paid.

4. VENDOR AND PURCHASER—POSSESSION BY VENDOR—ESTOPPEL TO
DENY TITLE OF VENDOR.—A purchaser holding possession of land
under an executory contract to purchase, the consideration not being
paid, holds in subordination to his grantor's title and cannot deny
his grantor's title unless he repudiates the contract and asserts an
adverse hostile title.

[As to estoppel of vendee under an executory contract to deny title
of vendor, see note in Ann. Cas. 1912C, 404.]

5. MORTGAGES—RIGHTS AND LIABILITIES OF PARTIES—USE OF PROPERTY
BY MORTGAGOR.—After the making and recording of a mortgage, the
mortgagor is not permitted to deal with the mortgaged property to
the prejudice of the mortgagee's rights, and all rights acquired in
the mortgaged property through the mortgagor are subject to the
mortgage.

6. MORTGAGES—RIGHTS OF PARTIES—ACTION BETWEEN MORTGAGEE AND
THIRD PARTY.—There is no privity of contract between a mortgagee
and a party holding under an executory contract to purchase from
the mortgagor, and hence the purchaser cannot maintain an action
for specific performance of his contract against the mortgagee, nor
can the mortgagee, after foreclosure, maintain an action on the con-
tract for the purchase price.

7. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—CONDITION PRECE-
DENT.—Under an executory contract to purchase land, the title to
pass when the purchase price was paid in full, no performance
would be enforced against the seller unless the purchaser accompanied
his application with an offer to pay the balance due on the pur-
chase price.

8. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—CONTRACTS EN-
FORCEABLE.—A purchaser holding under an executory contract to
purchase from a mortgagor could not have specific performance by
the mortgagor after foreclosure and sale, because it would be im-
possible for the mortgagor to perform.

9. VENDOR AND PURCHASER—RIGHTS OF PARTIES—TITLE TO PROPERTY.—
A purchaser of land under an executory contract does not acquire
the legal title until he pays the purchase price.

10. MORTGAGES—RIGHTS OF MORTGAGEE—LESSEE FROM MORTGAGOR.—
A lessee of mortgaged property from the mortgagor subsequent to
the recording of the mortgage holds subject to the mortgage.

11. MORTGAGES—ACTION TO FORECLOSE—NECESSARY PARTIES.—In the
strictest sense the only necessary parties to a foreclosure suit are
the mortagee, the mortgagor, and those who have acquired interests
in the premises subsequent to the mortgage.

12. JUDGMENT—MORTGAGES—ACTION TO FORECLOSE—PARTIES CONCLUDED
BY DECREE.—Where a mortgagor, after foreclosure and sale, agreed
that a purchaser holding under an executory contract to purchase
from the mortgagor could occupy the mortgaged premises without
making any further payments under the original contract, such pur-
chaser was not a necessary party defendant in the foreclosure pro-
ceedings, but was bound by the decree against the mortgagor.

APPEAL from a judgment of the Superior Court of the
County of Maricopa. J. C. Phillips, Judge. Reversed and
remanded.

STATEMENT OF FACTS BY THE COURT.

The appellant, in his representative capacity, commenced
two actions, seeking to recover separate city lots alleged to
belong to the estate of L. E. Payson, deceased. The prop-
erty involved in the first action was in the actual occupancy
of Jessie F. Tull and her husband, M. Tull. The prop-
erty involved in the second action was in the actual oc-
cupancy of J. M. Barney. The property involved in both
actions was property upon which the said estate held a mort-
gage, made by Joseph H. Holmes, while owner of the prop-

erty, to the intestate on November 9, 1898.    On May 5, 1909, Holmes sold all his estate in and to the mortgaged property to one B. G. Pecka; the said Pecka assuming and agreeing to pay the mortgage debt thereon and paying the balance of the agreed purchase price.    By direction of Pecka, Holmes conveyed the property to defendant United States Land, Title and Legacy Company, subject to the Payson mortgage.    This conveyance was accepted with full knowledge of all the said facts and subject to the said mortgage lien and the payment of the said debt assumed.    The defendant company on June 22, 1909, entered into a written agreement with one John Wm. Tyson, by which it agreed to convey to John Wm. Tyson lot 8 of Park View, a subdivision of lot 6, block 3, Murphy's addition to the city of Phoenix, a part of the mortgaged premises, ''as soon as the party of the second part (John Wm. Tyson) shall have fully and completely performed all things required to be performed by him under this contract.''    The contract provided that the party of the second part ''may go into immediate possession'' of said lot, and ''retain said possession at all times hereafter so long as this contract is complied with by said party of the second part.''

''The party of the second part hereby agrees to pay to the party of the first part the sum of thirteen hundred fifty dollars, with interest at the rate of 8.4 per cent per annum; said sum to be paid as follows, to wit: Two hundred dollars cash upon the delivery of this contract, the balance to be paid at the rate of seventeen dollars or more on the first day of each and every month after the date of this contract.    The party of the second part agrees to keep the buildings now located, or that may be located on said property, insured in the sum of eight hundred dollars, or more, against loss or damage by fire or other causes, and to pay all taxes assessed against said property after January 1, 1909.    The party of the second part further agrees that in case he shall at any time fail to comply with this agreement herein contained, the right to possession of said property shall thereupon terminate, and he will surrender such possession to said first party, and that in that case any further rights of the said second party under this agreement shall cease, all moneys

theretofore paid by the said second party shall be retained by first party and shall apply as rent paid by the said second party for the time the said second party has had possession of said property. It is agreed by both parties that time shall be the essence of this contract.''

On December 15, 1910, John Wm. Tyson entered into a like contract with defendant Jessie F. Tull, by which contract Jessie F. Tull agreed to make payments in the same sums and in like installments at the same time. The identical conditions of possession, loss of right to possession, and all other conditions entitling her to a conveyance are identical with the Tyson contract.

The defendant company entered into a contract on July 2, 1909, with James M. Barney to convey to him lot 9 in block 1, in Park View, a subdivision in block 3 of Murphy's addition to the city of Phoenix, also a part of the mortgaged premises. This contract is identical in terms with the Tyson contract above mentioned and described. Tyson went into possession of the first-described property pursuant to the terms of his contract, and delivered his possession to Jessie F. Tull and her husband pursuant to the terms of his contract of December 15, 1910. Barney went into possession pursuant to his contract on July 2, 1909. Neither of the said contracts were recorded. Neither the mortgagee nor the representative of his estate had any notice or knowledge of the contracts, and never consented to their making, nor recognized their binding effect.

After a sale under a decree of foreclosure of the mortgage, the defendants Tull and husband and Barney made no other or further payments under their respective contracts. These payments were suspended by an agreement with the defendant company, made after the said sale, until the title to the property was finally adjusted, by which agreement they continued to hold possession of the property, and the company agreed to protect their rights under the contracts.

The two actions were consolidated and tried upon the same evidence by stipulation of the parties with the consent of the court. Upon the trials, the plaintiff, in support of his title, offered in evidence the judgment-roll in the foreclosure ac-

tion, wherein and whereby the said mortgage debt and liens were established and foreclosed as against defendants Holmes and United States Land, Title and Legacy Company and S. Henry. The defendants objected to such evidence upon the grounds that the defendants Tull and Barney were not parties to such foreclosure action, and for that reason they are not bound by the judgment, and their rights are not affected thereby. The evidence was admitted subject to the objection. Plaintiff offered the execution and order of sale issued in said action upon the judgment, and the sheriff's return thereon, also the sheriff's certificate of sale, and the sheriff's deed to plaintiff, all of which were received subject to the same objection; that is, that such evidence was not effective as to defendants for the reason defendants were not parties to the foreclosure suit. Evidence of a demand upon defendants for possession was introduced by plaintiff. This was the evidence relied upon by plaintiff to recover.

The defendant S. Henry and the corporation disclaimed title, or made no defense to the action. The defendants Tull claimed title through the contract of the company with Tyson and Tyson's contract with Jessie F. Tull. Barney claimed title through his contract with the company. Both defendants claimed the right to possession under said contracts. Such contracts were offered and received in evidence. Tull admits he has paid nothing on the contract since he had notice of the sale by the sheriff, and in all he has paid $335. Defendant Tull had an agreement with defendant Henry, the president of the company, by which he agreed to protect defendants in possession. No taxes were paid by Tull after he had notice of the foreclosure sale. Barney paid the first two years' taxes; but has paid no taxes since. Barney agreed to remain in possession of the property, after the foreclosure sale and demand of possession, on condition that the defendant United States Land, Title and Legacy Company would protect him in his rights in the property. This defendant made the last payment upon his contract with the company on July 2, 1911.

A judgment for the defendants resulted, and, from the judgment and order refusing a new trial, plaintiff appeals.

Messrs. Kibbey, Bennett & Bennett, for Appellant.

Mr. Lysander Cassidy, Mr. W. L. Barnum and Mr. Henry Howard, for Appellees.

CUNNINGHAM, J.—This is a statutory action in the nature of an action in ejectment for the recovery of real estate. In such actions the complainant or plaintiff must recover on the strength of his own title. Paragraph 4110, Ariz. Rev. Stats. 1901. The common source of the title involved is through Joseph H. Holmes. The question is whether plaintiff, as the representative of the estate of L. E. Payson, has acquired the title and the right of possession incident thereto through his sheriff's deed, based upon the mortgage and foreclosure sale.

Plaintiff acquired all the title and right to possession he claims through the foreclosure of the mortgage. His suit to foreclose this mortgage was commenced March 22, 1911, on account of condition broken, a failure to pay the money secured thereby. At the time of foreclosure, defendant United States Land, Title and Legacy Company had acquired all the estate of Holmes in the mortgaged property, with knowledge of the mortgage debt. In the foreclosure suit Joseph H. Holmes and his wife, said company, and S. Henry were made parties defendant. Jessie F. Tull and her husband, M. Tull, were in the actual occupancy of one of the mortgaged lots, and James M. Barney was in actual occupancy of another of the lots involved in the foreclosure suit. By their answers their right to the possession so held was based on and made to depend solely upon conditional contracts not recorded, entered into with the said defendant company after it acquired Holmes' rights, and of which plaintiff had no notice. Such persons so actually in possession of said lots were not made parties to the foreclosure suit. The foreclosure suit resulted in an order of foreclosure and a sale, at which sale this plaintiff became the purchaser, and in due time the sheriff executed and delivered his sheriff's deed; no redemption from such sale having been made by anyone.

The defendants contend that the judgment of foreclosure and subsequent sale and deed are ineffective as to them and evidence of no title, for the reason they were in actual open, and notorious possession of the property and had such a valid,

subsisting interest therein as would require them to be made parties in order to foreclose their rights, and, not having been made parties, the foreclosure proceedings as to them and their rights are void.

Is a party holding an executory contract to purchase mortgaged property, executed by the mortgagor subsequent to the giving and recording of the mortgage and before a foreclosure is commenced, a necessary party defendant to such suit? What rights does such contracting purchaser acquire to the mortgaged property as against the mortgagee that the court in the foreclosure suit must recognize and protect under its judgment to the effect that the plaintiff recover his debt, damages, and costs with an order of foreclosure? An order of sale was issued to the sheriff directing him to seize and sell the same as under execution, in satisfaction of the judgment. Such is the judgment and order authorized by statute in foreclosure suits. Paragraph 1432, Ariz. Rev. Stats. 1901; paragraph 554, Ariz. Rev. Stats. 1913.

"A mortgage on land is not extinguished, nor its lien divested, by a sale of the premises to a purchaser who has notice of the mortgage; but, on the contrary, his title is taken subject to the mortgage, and is not better or stronger than that of his grantor, which . . . is a legal title charged with the mortgage lien, but . . . is subject to the contractual and statutory rights of the mortgagee. The purchaser's possession under his deed is in subordination to the title of the mortgagee, to the same extent as that of his grantor, and cannot cease to be of that character, and become such an adverse possession as may ripen into a title under the statute of limitations, until there is an open assertion of a distinct and hostile title with the knowledge of the mortgagee." 27 Cyc. 1337, 1338.

Where one agrees to buy, and another agrees to sell, land, and the consideration is not paid, and the party contracting to buy enters into possession, the fair inference is that the entry and possession are in subordination to the title of the seller until the stipulated payment is made. *Hart* v. *Bostwick*, 14 Fla. 162.

It is said in *Goodwin* v. *Markwell,* 37 Fla. 464, 467, 19 South. 885, 886:

"The authorities clearly establish the principle that, if one goes into possession of land under contract of purchase without paying the purchase money, he thereby admits the title of the vendor"—citing *Hart* v. *Bostwick, supra.*

In *Palmer* v. *McCafferty,* 15 Cal. 334, the action was to recover a tract of land. The error assigned by appellant was the exclusion of a certain executory contract for the sale of the land sued for. It was offered to show in connection with it that the defendant claimed the premises under one Wooster, who was a party to the instrument. The court says:

"It seems that Wooster executed a mortgage of these premises to defendant, and that the latter foreclosed the mortgage, and went into possession under the decree of foreclosure. The object of the plaintiff was to show that he had succeeded to the estate of Scaggs & Co., who made this executory agreement, and that Wooster and his assigns, having failed to comply with the contract on their part, forfeited all their rights under the same; and that, by force of this, Scaggs & Co., became remitted to their original title, of which plaintiff was the assignee. . . . *Prima facie* the plaintiff's proof, thus offered, was relevant to the issue, and that was enough to entitle him to introduce it."

Plaintiff's object being to show that Wooster had forfeited his rights under the contract.

The buyer under an executory contract, then, acquires no better right or estate in the premises which he contracts to purchase, by a failure to pay the consideration, according to the terms of this contract, than his grantor had, and he holds possession acquired through such contract until the purchase price is paid subject to the conditions of the contract, in subordination to the grantor's title. Like a tenant, he cannot deny the grantor's title unless he repudiates the contract and asserts an adverse, hostile title, whereupon he becomes a trespasser and is subject to be ousted as such.

In this case the mortgage was of record at the date the contracts, under which defendants claim rights, were made. Their rights thus acquired were clearly subject to the plaintiff's mortgage. Their possession was subordinate to the rightful possession of their grantor, United States Land, Title and Legacy Company, holding under its legal title, and sub-

ject to the same infirmities and liens. Their grantor held in subordination to plaintiff's rights. When the title of their grantor was extinguished, because their rights depended wholly upon the rights of their grantor, their rights to possession ceased to exist, and nothing remained upon which they could base a right to possession. Otherwise a mortgagor could by a sale of the mortgaged property, without the knowledge or consent of the mortgagee, wholly wipe out the mortgage lien. After the making and recording of a mortgage, the mortgagor is not permitted to deal with the mortgaged property, to the prejudice of the mortgagee's rights, and all rights acquired in the mortgaged property, under such circumstances, through the mortgagor, are subject to the mortgage. No privity of contract exists between the defendants and the mortgagee in this case. The defendants have no such relation with the mortgagee as would sustain an action of specific performance of their contract in any event when prosecuted against the mortgagee, nor could the mortgagee maintain an action to recover the installments provided by the contract. On the facts shown, no performance of the contract would be enforced against the mortgagor by a court of equity, in the absence of a mortgage foreclosure, unless defendants would accompany their application with an offer to pay the balance due on their contract of purchase. After a foreclosure and sale consummated in a sheriff's deed, the person holding the executory contract could not have a specific performance by the mortgagor, because he is then in no position to convey any estate. The only remedy left is upon a breach of contract.

The holder of an executory contract to purchase mortgaged property, made with the mortgagor, or with the purchaser of the mortgaged property, assuming the mortgage debt, the mortgage being of record, is in a similar position to defend a foreclosure with a lessee of the mortgaged property. The first, to protect his contract from foreclosure, must pay the balance due on the purchase price either to the grantor or to the holder of the mortgage before he acquires any legal title. The mortgagee is not bound to receive payment if offered, and, if the mortgagor accepts payment, the title conveyed is still subject to foreclosure. His only right acquired is the right to possession until condition broken, or a foreclosure and sale of the property and deed issue. The leaseholder by

his lease acquires a right to the use and enjoyment of the property for the full term of his lease, subject to the mortgage. Until the term expires, either by the terms of the lease or by the enforcement of the mortgage lien and delivery of the deed through foreclosure proceedings, the lessee has the right to possession. Neither party has any estate in the property involved, other than the right to the possession as limited by the contractual relations and by a foreclosure of the mortgage as consummated in the sheriff's deed.

The court in *McDermott* v. *Burke,* 16 Cal. 589, speaking through FIELD, C. J., considering the rights of a lessee whose lease was subject to the mortgage, after a foreclosure of the mortgage, in which the lessee was not made a party, says:

"A mortgagor cannot make a lease which will bind his mortgagee, where the lessee at the time had notice of the mortgage, either actual or constructive. The interest of the lessee in such case is dependent for its duration except as limited by the terms of the lease, upon the enforcement of the mortgage. So long as the mortgage remains unenforced, the lease is valid against the mortgagor, . . . but with its enforcement the leasehold interest is determined. There is no privity of contract or of estate between the purchaser upon the decree of sale and the tenant. The purchaser may therefore treat the tenant as an occupant without right, and maintain ejectment for the premises. He cannot, for the want of such privity, count upon the lease, and sue for the rent or the value of the use and occupation. The relation between the purchaser and tenant is that of owner and trespasser until some agreement, express or implied, is made between them with reference to the occupation. Until then, both are equally free from any contract obligations to each other. The tenant is not bound to attorn to the purchaser, nor is the latter bound to accept the attornment, if offered. The purchaser may prefer to have the possession, and the tenant may also prefer to surrender it. . . . The error of the plaintiff arises from a misapprehension of the rule as to the parties necessary to the foreclosure of a mortgage. The rule only requires, as parties, those who are beneficially interested in the claim secured or in the estate mortgaged. The tenant is not thus interested in the claim; he is not en-

titled to its proceeds when collected, or to any portion of the proceeds. Nor is he thus interested in the estate mortgaged; that is, in the title which is pledged as security. He has not succeeded to such estate, or to any portion of such estate. He does not stand, therefore, in the position of a purchaser. The estate remains in his lessor; he has only a contingent right to enjoy the premises. The right of the lessor to the possession ends with the sale of the premises, or rather with the deed by which the sale is consummated. The right of the tenant to such possession depends upon that of the lessor and goes with it.''

In *Tyler* v. *Hamilton,* 62 Fed. 187, 190, the court, considering the question of parties to a mortgage foreclosure case, where the lessee contended he was not bound because he was not a party thereto, says:

''The leases were made subsequent and subject to the mortgages. The contract of leasing was wholly between the mortgagor and the lessee. The mortgagee had no privity with the lessee. It did not assent to the leases, and its rights were not affected thereby. The lessee, while in possession as tenant of the mortgaged premises, had no seisin thereof. His possession was the seisin of the lessor, who held the legal title. The tenants in possession were not necessary parties to the foreclosure suit. They had no lien upon the land, and no equity of redemption therein. The foreclosure sale operated to evict them by title paramount. From and after the sale they were trespassers, unless they attorned to the purchaser, or the purchaser recognized their rights as tenants''— citing *Rogers* v. *Humphreys,* 4 Ad. & E. 299; *McDermott* v. *Burke,* 16 Cal. 580; *Teal* v. *Walker,* 111 U. S. 248, 28 L. Ed. 415 [4 Sup. Ct. Rep. 420]; *Haven* v. *Adams,* 4 Allen [Mass.], 80. '' . . . The defendants are before the court, not seeking the intervention of equity for the protection of their rights by redemption from the mortgage sale, but contending that the failure of the mortgagee to bring them in as parties defendant to the foreclosure suit operated as a recognition of their status as tenants, and a ratification of their leases. This contention cannot avail them, for, as we have seen, they were not necessary parties to that suit, and, so far as the mortgagee was concerned, their rights were extinguished by the foreclosure sale.''

In *Western Union Tel. Co.* v. *Ann Arbor R. Co.,* 90 Fed. 379, 33 C. C. A. 113, the court states:

"The rule that the mortgagor cannot bind the mortgagee by lease or other contract is not changed thereby. (By a statute of Michigan to the effect that no action of ejectment shall be maintained by a mortgagee for the recovery of the mortgaged premises until the title thereto shall have become absolute upon a foreclosure of the mortgage.) When the mortgagee acquires possession of the mortgaged land by foreclosure sale, the effect of his possession upon those claiming under the mortgagor is just as complete to avoid their rights and interests as was entry or ejectment at common law. Nor does it prevent this result that the holder of the easement may not have been made a party to the foreclosure suit. The easement was granted subject to being divested by the mortgagee's acquiring possession of the mortgaged premises. That event has happened, and the divesting follows."

*Strong* v. *Smith,* 68 N. J. Eq. 686, 60 Atl. 66, 63 Atl. 493, arose upon an application of a purchaser under a decree for the foreclosure of a mortgage for a writ of assistance. A party claimed to be in possession of the mortgaged premises under an unrecorded lease made to him by the mortgagor for a term of five years, and that his possession had been open and continuous since the date of the lease. This claim was disallowed and the writ issued. The party contended in the court of appeals that such a writ can lawfully issue against those only who are bound by the decree in the cause, and that as his rights were acquired before the commencement of the suit, and he was not made a party defendant, although in open occupancy of the property, the decree did not affect him. The court suggests that such a party may not be bound by the decree, and it is necessary that some court shall pass upon his rights when he is brought before it, and says:

"If, when he is thus brought in, it is clearly shown that he claims under one who was a party to the suit, and that his right of possession is undoubtedly subordinate to the right for the enforcement of which the writ of assistance is prayed, then it may be issued against him, even though technically he is not bound by the decree."

In the strictest sense the only necessary parties to a foreclosure suit are the mortgagee, the mortgagor, and those who

have acquired interests in the premises subsequent to the mortgage. Proper parties are those who are so connected with the subject matter that their presence on the record cannot be objected to as a misjoinder, while, on the other hand, if they are not included, a full and complete decree can still be made without considering or affecting their rights. 27 Cyc. 1563.

If it be conceded that, up to the date of the delivery of the sheriff's deed, these defendants had acquired such an equitable interest in the subject matter of the foreclosure suit as would have made them proper parties, what effect must be given to their subsequent modified agreements with the defendant company by which the payments under the contracts were suspended and possession retained in abrogation of the express terms of their conditional contracts? At the time this action was commenced, the defendants Tulls and Barney, by their admissions while testifying as witnesses, were holding possession of the premises, not by reason of the original contracts, but by reason of the modification of important terms of those contracts, and under such modified contracts. Clearly, then, they were holding possession of the premises under an agreement made with the judgment debtor, party to the foreclosure suit, after sale made under the decree of foreclosure. Such contract was made (that is, the original contract was modified) at a time after the sale under the decree of foreclosure, and after actual notice of the judgment and sale, and as a means to protect defendants in possession. Evidence of such fact makes a very different case from the case set up in the answer. By the modification of the contracts, as between the parties thereto, the defendant company waived a strict performance of the original contract, otherwise the defendant company could have recovered possession, by reason of the admitted failure to perform. Is it possible that a party who purchases mortgaged property from one standing in the place of the mortgagor can enter into an executory conditional contract with a third party, charged with constructive notice of the mortgage, and after a decree of foreclosure and sale the executory contract, not having been recorded, can so modify the terms of such conditional executory contract as to confer rights upon the stranger to the mortgage suit that must be respected by the

mortgagee and avoid the decree of foreclosure and thereby defeat a recovery of possession because such third party was not made a party to the foreclosure suit? By reason of the modification alone, the defendants Tull and Barney clearly became occupants, thereafter holding possession under and through a contract made with the defendant company after foreclosure and sale, and clearly such parties, assenting to a modification of their contracts and so occupying the property thereunder; acquired only such rights to the mortgaged premises as are bound by the foreclosure decree and sale, notwithstanding their open and notorious occupancy of the mortgaged premises at the commencement of the foreclosure suit. The nature of this occupancy became changed by their modified agreement. The evidence objected to was clearly not subject to the objection, for the reason the objecting defendants in effect submitted to the decree of foreclosure and sale when they modified their contracts and claim rights under the modification.

Defendants Tull and Barney are not here seeking to redeem; they are here asserting a right, admitting they acquired their right through one standing in the place of the mortgagor, after the mortgage lien accrued and matured and was foreclosed. Their claim is without foundation in law or equity. Their evidence does not support their answer, but contradicts its terms by substituting another and different contract in support of their right to be heard. Before a court of equity would entertain their cause, as developed by the evidence, they would be required to offer to do equity; that is, offer to redeem from the sale. Before their contract was modified, they must have offered to pay the balance of the consideration agreed upon in addition to their offer to redeem. After the modification of the contracts, they would have to prove the performance of the stipulation in order to recover from the mortgagor (that is, that appellant's title was defeated in favor of the mortgagor), and offer to pay the balance of the purchase money. The effect of the modification of the contract was that defendant United States Land, Title and Legacy Company granted to these defendants Tull and Barney the right to occupy the mortgaged premises without making any further payments of the stipulated purchase price until appellant should finally be defeated or should

finally recover the property, upon condition that said parties retain possession after the balance of the purchase price became payable. The evidence on the trial uncontrovertibly established that defendants Tull and Barney were so holding possession of the property at the commencement of this suit. It cannot be doubted, from such evidence, that they were holding under and through defendant United States Land, Title and Legacy Company, and as that defendant was a party to the decree of foreclosure, and it is bound by that decree, the defendants are likewise bound by the decree, although not parties to it, because they agreed to hold possession and were holding possession of the property at the commencement of this suit for and in behalf of said company and in subordination to the title of the mortgagee. The question of parties to the foreclosure suit was disposed of when defendants admitted the nature of their possession at the time of the commencement of this action. They could not hold possession under the modified contract to defeat the decree of foreclosure and sale, upon the grounds that they began to occupy the premises under another and different contract which was in force when the foreclosure suit was commenced. By the modification, the original contract ceased to be effective for any purpose of possession. The issue here was the right of possession at the commencement of this suit. Defendants admit in their evidence that their right to possession at the commencement of this suit was acquired after the sale of the property under foreclosure from a party to the foreclosure suit. Such is no defense to this action.

The judgments for these reasons are erroneous and must be reversed. The cause is remanded for further proceedings in accordance with law and not in conflict herewith.

FRANKLIN, C. J., and ROSS, J., concur.

Application for rehearing denied.

---

NOTE.—For the general rule that plaintiff must recover, if at all, on the strength of his own title in action of ejectment, see note in 18 L. R. A. 781.

As to the effect of defendant's inability to specifically perform, see note in 16 L. R. A. 614.