*373
 
 Stephenson, J.
 

 Identical questions being involved in both of these cases, they were by consent submitted together, were so considered, and will be passed upon in one opinion.
 

 Plaintiffs in error raise the following questions:
 

 (a) Could the L. & B. Holding Company, the corporation from whom J. "William McCarty received title, execute a valid deed before the corporation was legally in existence, and could any such deed be modified by parol evidence or reformed without an action specially for that purpose?
 

 (b) Where a grantee assumes a mortgage which is foreclosed, can a personal judgment be awarded against said grantee before the sale of the mortgaged premises and the ascertainment of the actual deficiency?
 

 (c) Can a grantee who, in the deed to him, has assumed a portion of a mortgage indebtedness, be held for a deficiency judgment on foreclosure of the mortgage on the premises where the chain of assumption of said mortgage indebtedness has been broken in a deed to prior grantees in the chain of title?
 

 (d) Can a grantee who has assumed in his deed a certain mortgage, the chain of assumption of which has been previously broken in a prior deed, be held to such assumption by reason of the covenants of an extension agreement between the original mortgagor, a prior grantee, and the mortgagee, executed subsequently to said break, but to which the assuming grantee was not a party, and which contained covenants other and different from those expressly stated in the deed to said assuming grantee?
 

 These propositions will be considered
 
 seriatim.
 

 It is fundamental that a corporation cannot execute a deed as a corporation until it has a corporate existence. This was a question of fact. Testimony was introduced in the trial court as to the time of the execution and delivery of the deed. On this proposi
 
 *374
 
 tion the court found against plaintiffs in error. There was some evidence +~. support this finding and this court cannot distm' it. It is contended that the court erred in admitting parol testimony to establish the date of execution and delivery of the deed. A deed is presumed to have been executed and delivered as of the date it bears, but this is a rebuttable presumption, and it is well settled that the true date may be established by parol testimony. The most that McCarty or his heirs could have done would have been to demand a curative deed, and, in the event it was refused, sue for a proper deed. Inasmuch as McCarty accepted the deed and took possession under it, we do not regard this question as of serious moment.
 

 “Can a personal judgment be taken against an assuming grantee before the sale of the mortgaged premises and ascertainment of the exact deficiency?”
 

 The property has been sold in this case, the proceeds of sale applied to the extinguishment of the debt, and the deficiency ascertained. If the McCarty estate is liable, is not this question moot at this time?
 

 As we view it, there are just two questions of law for this court to determine in this case:
 

 First, under all the facts and circumstances of the case, is the estate of J. William McCarty, deceased, liable to the mortgagee herein?
 

 Second, if the estate is liable to the mortgagee, what is the extent of liability?
 

 The facts that control these propositions are documentary and are not disputed.
 

 In approaching this question we are brushing aside the extension agreement between Kellogg and the Seillers. McCarty was not a party to it and was not bound by it.
 

 The fact that the agreements were entered of record adds nothing. These instruments were not of such a character as the law requires to be recorded in order to impart notice. We are content with the theory
 
 *375
 
 that McCarty knew nothing of these extension agreements; consequently, the further fact that there was no consideration moving to the Seillers for these extension agreements could make no difference to McCarty.
 

 As we see it, the fact that the cord of privity was broken between the original mortgagee and the Seillers does not affect the result that must be reached in this case. All the real estate in question reached the Seillers. As a part of its purchase price, they agreed to pay both mortgages in question here. The Seillers by conveyance passed it on to the L.
 
 &
 
 B. Holding Company. This deed refers to the same mortgages specificially, and the company agrees to pay them as a part of the consideration.
 

 Thereupon, McCarty made his proffer of exchange of properties to the L.
 
 &
 
 B. Holding Company, in which he refers to the specific land and the specific mortgages, in which he agrees to take the land subject to the mortgages plus $200 on one mortgage and $100 on the other “this to apply on principal.”
 

 This proposition was accepted by the company, and deeds were exchanged. In the deed from the company to McCarty these specific mortgages were excepted .from the covenant against incumbrances, and McCarty assumed and agreed to pay them as a part of his consideration.
 

 Upon what ground can one who assumes and agrees to pay “mortgage and interest” object to a deficiency judgment being taken against him? The expression “mortgage and interest” comprehends the entire debt. Interest clauses in mortgages in general, and in the mortgages involved herein, in particular, mention interest only in the condition of defeasance, in substance as follows: “Provided, nevertheless, if the (mortgagor) shall pay or cause to be paid his certain promissory note of even date herewith in the sum of $-with interest at-% from date when the same
 
 *376
 
 shall become due, then these presents shall become void; otherwise to remain in full force and effect.”
 

 One cannot plead ignorance of the contents of a mortgage which he assumes and agrees to pay with “interest.”
 

 We are not unmindful of the subtle niceties drawn where land is taken by subsequent grantees “subject to a mortgage.” In such a case the grantee assumes no personal responsibility, according to the great weight of authority. But such grantee must not assume and agree to pay the mortgage, for by so doing he injects his personality into the matter and becomes personally liable.
 

 McCarty took this land under an agreement to pay, and to the extent of his agreement he became personally liable; and it could make no difference to him when a personal judgment was awarded against him, whether before or after the sale of the mortgaged premises on foreclosure.
 

 McCarty’s contract was not a contract to indemnify prior grantors. It was a contract to pay the debt, and this liability could be enforced in a suit to foreclose the mortgage.
 
 Green
 
 v.
 
 Stone, 54
 
 N. J. Eq., 387, 34 A., 1099, 55 Am. St. Rep., 577; also see notes, 78 Am. Dec., 72, 71 Am. St. Rep., 201, and 8 L. R. A., 315.
 

 It is claimed that because there was a break in the assumptions of the mortgages there was no privity between the holder of the note and mortgage and McCarty.
 

 Though there is authority supporting this view, the decisions hold almost unanimously that a grantee of premises, in assuming a mortgage thereon, renders himself liable for the discharge of the mortgage debt; not only to the mortgagor, but also to the mortgagee. 19 Ruling Case Law, Section 145, pages 374 and 375.
 

 This court has heretofore held that “where the grantee of a parcel of real estate, as part of the purchase price thereof, assumes to pay a debt secured
 
 *377
 
 thereon by a mortgage — the grantor being also personally bound for the payment — such assumption, as between the grantor and grantee, constitutes the grantee the principal debtor, and the grantor his surety.”
 
 Poe
 
 v.
 
 Dixon,
 
 60 Ohio St., 124, 54 N. E., 86, 71 Am. St. Rep., 713, first paragraph of syllabus.
 

 We find no prejudicial error in the record herein, and the judgment of the Court of Appeals is hereby affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Allen and Matthias, JJ., concur.
 

 Kinkade and Jones, JJ., not participating.